Lin Guo XI, Petitioner–Appellant,

v.

UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Opinion, Respondent–Appellee.

No. 01–35867.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 2002.

Filed Aug. 1, 2002.

Jay W. Stansell, Assistant Public Defender and Michelle Sweet, Staff Attorney, Federal Public Defender's Office, Seattle, WA, for the petitioner.

Brian G. Slocum, Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., for the respondent.

Before RYMER, McKEOWN and GOULD, Circuit Judges.

## OPINION

McKEOWN, Circuit Judge.

■ Just a year ago the Supreme Court held that 8 U.S.C. § 1231(a)(6) "limits an alien's post-removal-period detention" to a reasonable time period and "does not permit indefinite detention" by the Immigration and Naturalization Service ("INS").

*Zadvydas v. Davis*, 533 U.S. 678, 689, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). We are now presented with the question of whether this statute bears the same meaning for an individual deemed inadmissible to the United States under 8 U.S.C. § 1182. The answer is yes. Our analysis of § 1231(a)(6) begins and ends with *Zadvydas*. Because the Supreme Court construed the statute, we are bound by that framework and thus are not called upon to address the scope of any constitutional claims of an inadmissible alien. Indeed, like the Supreme Court, we recognize that the result might be different were this a constitutional question. The petitioner here, Lin Guo Xi, falls squarely within the ambit of § 1231(a)(6) and, consequently, within the Supreme Court's holding in *Zadvydas*. We therefore reverse the district court's dismissal of Lin's habeas petition. This result does not, however, mean that Lin will be released automatically. Instead, on remand Lin will be entitled to supervised release if he can demonstrate that there is no significant likelihood of his removal to China in the reasonably foreseeable future.

## BACKGROUND

Lin Guo Xi, a citizen of China, fled his homeland for the Northern Mariana Islands in June 1997. Lin was never legally admitted to the United States. The United States Coast Guard apprehended him off the coast of Guam on a boat that was being used to smuggle aliens in violation of United States immigration laws. Lin pleaded guilty to the smuggling charge. At the conclusion of his six-month sentence, Lin was detained by the INS pending the outcome of removal proceedings. Lin was transferred from the detention facility in Guam to a facility in Seattle, Washington.

Lin applied for asylum based on his opposition to China's family planning laws. An immigration judge denied Lin's claim and issued a removal order which became final in May 1999. It is disputed how many times the INS attempted to secure travel documents for Lin's return trip to China and how many times he refused to cooperate. It is, however, undisputed that in February 2001, Lin agreed to cooperate with the INS in obtaining travel documents. A request for travel documents was accordingly submitted to the Chinese consulate, which has not yet responded. The parties dispute whether China accepts the return of its nationals who have been ordered removed from the United States.

When the INS first reviewed Lin's detention status in February 2001, it found that Lin had a place to stay and an employment prospect in Washington state, but concluded that these facts were of no significance because "[t]he Chinese Consulate regularly issues travel documents to their citizens in I.N.S. custody." The reviewing officer thus recommended that Lin be kept in detention. After the District Director of the INS agreed with this recommendation, Lin filed a habeas petition pursuant to 28 U.S.C. § 2241. Ten days before the Supreme Court's decision in *Zadvydas*, the district court denied Lin's petition. Lin filed a motion for reconsideration, citing the new decision. The district court issued a minute order denying the motion for reconsideration because Lin was never lawfully admitted to the United States and thus "subject to the entry fiction doctrine." Lin remains in detention pursuant to § 1231(a)(6).

## ANALYSIS

**Ordinarily, when an alien is ordered removed from the** United States, the Attorney General is obliged to facilitate that individual's actual removal within 90 days,

a period called the "removal period." 8 U.S.C. § 1231(a)(1). During the removal period, the Attorney General is required to detain an individual who has been ordered removed on certain specified grounds. 8 U.S.C. § 1231(a)(2). Congress, however, recognized that securing actual removal within 90 days will not always be possible. Consequently, the statute authorizes detention beyond the removal period:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6). We must determine whether this statute permits the indefinite detention of an individual in the first enumerated category who, like Lin, has been deemed inadmissible to the United States.

## I.

In *Zadvydas,* the Supreme Court held that § 1231(a)(6) did not permit the indefinite detention of two long-time resident aliens who committed crimes and as a consequence were ordered removed. No country was willing to accept either individual once they were ordered removed. Notwithstanding that circumstance, the Attorney General continued to hold them in detention for years after the removal period. 533 U.S. at 684–86, 121 S.Ct. 2491. The Court reasoned that "indefinite, perhaps permanent, deprivation of human liberty" without judicial review presented an "obvious" constitutional difficulty. *Id.* at 692, 121 S.Ct. 2491. In "interpreting the statute to avoid a serious constitutional

threat," the Court concluded "that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *Id.* at 699, 121 S.Ct. 2491.

In *Zadvydas,* the "constitutional threat" that concerned the Court was the prospect of the government's indefinite, potentially permanent detention of resident aliens who have been deemed deportable. *Id.* at 692, 695–96, 121 S.Ct. 2491. Lin is not a resident alien. Indeed, he was not even within the United States when he was apprehended. Accordingly, the removal order entered against him was premised upon his inadmissibility to the United States. *Compare* 8 U.S.C. § 1182("Inadmissible aliens") *with* 8 U.S.C. § 1227 ("Deportable aliens").

Section 1231(a)(6), however, does not draw any distinction between individuals who are removable on grounds of inadmissibility and those removable on grounds of deportability. On its face, the statute applies symmetrically to three classes of aliens: (1) those who are "inadmissible under section 1182;" (2) those who are deportable under sections 1227(a)(1)(C) (violation of nonimmigrant status or condition of entry), 1227(a)(2) (criminal offenses), or 1227(a)(4) (security and related grounds); or (3) those who are a risk to the community or unlikely to comply with the removal order.

Although *Zadvydas* concerned the second prong of the statute—relating to deportable aliens—the Court's ultimate holding addresses the statute as a whole: "we construe the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal court review." 533 U.S. at 682, 121 S.Ct. 2491. In assessing the applicability of the statute, the Court spoke broadly, noting that it "applies to certain categories of aliens who have been ordered removed, namely *ina-*

*dimissible* aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons...." *Id.* at 688, 121 S.Ct. 2491 (emphasis added). Concluding that the statute "does not permit indefinite detention," the Court pointedly used the term "aliens" as opposed to "deportable aliens:"

> [W]e read an implicit limitation into the statute before us. In our view, the statute, read in light of the Constitution's demands, limits an alien's post removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention.

*Id.* at 689, 121 S.Ct. 2491.

■ The clear text of the statute, coupled with the Supreme Court's categorical interpretation, leaves us little choice but to onclude that *Zadvydas* applies to inadmissible individuals like Lin. The statute, on its face, makes no exceptions for inadmissible aliens. The Supreme Court's unqualified holding provides that the statute "does not permit indefinite detention." *Id.* It is a venerable principle of statutory interpretation "that where the Legislature makes a plain provision, without making any exception, the courts can make none." *French's Lessee v. Spencer,* 62 U.S. (21 How.) 228, 238, 16 L.Ed. 97 (1858) (citations omitted). We can only assume that the Supreme Court intended to maintain fidelity to this principle when it interpreted § 1231(a)(6) in *Zadvydas.*[1]

■ We thus abide by the Supreme Court's interpretation of § 1231(a)(6) and hold that Lin may not be subjected to indefinite detention. *See Rivers v. Road-*

*way Express, Inc.,* 511 U.S. 298, 312–13, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994) ("It is [the Supreme Court's] responsibility to say what a statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law. A judicial construction of a statute is an authoritative statement of what the statute mean[s] ...."); *Elmendorf v. Taylor,* 23 U.S. (10 Wheat) 152, 160, 6 L.Ed. 289 (1825) ("[T]he construction given by this Court to the constitution and laws of the United States is received by all as the true construction....").

### II.

The government places considerable stock in the Supreme Court's statement in *Zadvydas* that:

> We deal here with aliens who were admitted to the United States but subsequently ordered removed. Aliens who have not yet gained initial admission to this country would present a very different question.

533 U.S. at 682, 121 S.Ct. 2491. In effect the government argues that the statute should be interpreted differently for admitted aliens and inadmissible aliens. But the wording of the statute does not allow such a construction. And, as Justice Kennedy pointed out in his dissent, such a bifurcated construction is untenable. Among Justice Kennedy's chief criticisms were that

> [a]ccepting the majority's interpretation, then, there are two possibilities, neither of which is sustainable. On the one hand, it may be that the majority's rule applies to both categories of aliens....

---

1. The Supreme Court's decision in *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) does not counsel a different result. *See Zadvydas,* 533 U.S. at 689, 121 S.Ct. 2491.

The statute at issue in *Crowell* was not written, as here, in a manner which required the consistent treatment of two different categories.

On the other hand, the majority's logic might be that inadmissible and removable aliens can be treated differently. Yet it is not a plausible construction of § 1231(a)(6) to imply a time limit as to one class [deportable aliens] but not to another [inadmissible aliens]. The text does not admit this possibility.

*Id.* at 710, 121 S.Ct. 2491 (Kennedy, J. dissenting). The majority did not respond to this critique or otherwise restrict its interpretation of § 1231(a)(6) only to those individuals deemed deportable. The result then is as Justice Kennedy observed: "the majority's rule applies to both categories of aliens." *Id.*

Because Lin never gained admission to the United States, the government argues that his case is governed by our en banc decision in *Barrera–Echavarria v. Rison*, 44 F.3d 1441 (9th Cir.1995), where we approved the protracted detention of "excludable" aliens. We are, of course, aware of the "basic territorial distinction" at play in immigration law: "It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." *Zadvydas*, 533 U.S. at 693–94, 121 S.Ct. 2491. An alien

> who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here ... [must be given an] opportunity to be heard upon the questions involving his right to be and remain in the United States.

*Yamataya v. Fisher*, 189 U.S. 86, 101, 23 S.Ct. 611, 47 L.Ed. 721 (1903).

In contrast, "an alien on the threshold of initial entry stands on a different footing," with regard to Due Process rights. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953). In *Mezei* the Court created an "entry fiction," which extended this distinction to some individuals within the United States but who, as a result of their status, are deemed technically to be outside. Under an earlier version of the INA, we interpreted this fiction to

> authorize[ ] the courts to treat an alien in exclusion proceedings as one standing on the threshold of entry, and therefore not entitled to the constitutional protections provided to those within the territorial jurisdiction of the United States.

*Ma v. Ashcroft*, 257 F.3d 1095, 1107 (9th Cir.2001).

The district court denied Lin habeas relief on the grounds that he was subject to the entry fiction and, attendantly, to our decision in *Barrera–Echavarria*. Ultimately, the problem with the government's argument and the district court's order is that the statute interpreted in *Barrera–Echavarria* no longer exists Instead we are bound by the Supreme Court's interpretation of the now-applicable statute, 8 U.S.C. § 1231(a)(6), which was added to the INA by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208 (Division C), 110 Stat. 3009–546.[2] The govern-

---

**2.** The government also argues that our decision in *Ma v. Ashcroft*, 257 F.3d 1095, 1107–09 & n. 22 (9th Cir.2001), reaffirmed *Barrera–Echavarria's* continuing applicability. The government is mistaken. *Ma*, the companion case to *Zadvydas*, concerned an individual who had entered the United States, as opposed to one at the "threshold of initial entry." In a footnote in *Ma*, we stated that

"[t]here is no inconsistency between our statutory holding in *Barrera–Echavarria* and our statutory holding" in *Ma* because *Barrera–Echavarria* considered the case of an excludable alien whereas *Ma* considered "the entirely different question of aliens who have already entered the country." *Ma*, 257 F.3d at 1109 & n. 22. Our acknowledgment that there was no contradiction between *Ma* and *Barrera–*

ment asks us to read § 1231(a)(6) in light of the statutory holding in *Barrera–Echavarria.* Doing so, however, is untenable. This is not only because of the absence of any provision in the INA's earlier incarnation that corresponds to § 1231(a)(6), but also because IIRIRA introduced an entire set of new legal concepts purporting to redefine the "basic territorial distinction" at play in immigration law. *Zadvydas,* 533 U.S. at 694, 121 S.Ct. 2491.

In its brief, the government implies that the central operating terms of the two statutes are functionally the same—namely, the government suggests that "entry" and "admission" are interchangeable and that "excludable" and "inadmissible" are interchangeable. This suggestion, however, fails to acknowledge the extent to which IIRIRA has altered the statutory landscape of immigration law.

The INA is no longer denominated in terms of "entry" and "exclusion." IIRIRA replaced these terms with the broader concept of "admission." Section 1101(a)(13), which formerly defined "entry" as "any coming of an alien into the United States, from a foreign port or place ...," 8 U.S.C. 1101(a)(13) (1994), now defines "admission" to mean "the lawful entry of [an] alien into the United States after inspection and authorization by an immigration officer," 8 U.S.C. 1101(a)(13)(A) (2002). Concomitantly, IIRIRA dropped the concept of "excludability" and now uses the defined term of "inadmissibility." Although the grounds for being deemed inadmissible are similar to those for being deemed excluda-

ble, *compare* 8 U.S.C. § 1182 (1994) *with* 8 U.S.C. § 1182 (2002), there are substantial differences between the two statutes. Under the pre-IIRIRA INA, "excludable" aliens were entitled to less procedural protection than "deportable" aliens, but once an individual effected entry into the United States, whether lawful or unlawful, that individual would receive the procedural protections of a deportation hearing as opposed to an exclusion hearing. 8 U.S.C. § 1251(a)(1) (1994); *see also, Landon v. Plasencia,* 459 U.S. 21, 28, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) ("[O]nly 'entering' aliens are subject to exclusion."). The same relationship does not hold between being "inadmissible" and "deportable." Under the amended INA, an inadmissible alien who is unable to demonstrate two years of continuous presence within the United States may be removed from the United States with the same limited procedure afforded those who are, in the most literal and practical sense, on the threshold of initial entry. 8 U.S.C. § 1225(b)(1)(A)(iii) (2002).

Despite these major statutory changes, the government urges us to decide Lin's case as if he were an excludable alien. We simply cannot ignore that "excludable" is no longer a term that has any statutory import under the INA. Lin was ordered removed on the basis of his inadmissibility. His continued detention is governed by a statute that refers to inadmissible aliens and the Supreme Court has interpreted that statute to preclude indefinite detention.[3] *Zadvydas,* 533 U.S. at 699, 121

---

*Echavarria* was not tantamount to reaffirming the latter, which dealt with an entirely different statute and an individual falling into a different immigration category. In other words, we saw no need to reconcile the cases.

3. In a recent per curiam opinion, the Seventh Circuit approved the protracted detention of an excludable alien. *Hoyte–Mesa v. Ashcroft,*

272 F.3d 989 (7th Cir.2001). There, Hoyte–Mesa, a Mariel Cuban, challenged his detention on exclusively constitutional grounds. *Id.* at 990. In contrast, Lin seeks to avail himself of the Supreme Court's interpretation of § 1231(a)(6) in *Zadvydas.* Thus, we need not determine whether to adopt the reasoning of *Hoyte–Mesa.*

S.Ct. 2491. That Lin might have been deemed "excludable" under a superceded version of the INA is of no consequence.[4] Similarly, that Lin's case may not implicate the same constitutional concerns as the individuals in *Zadvydas* is of noimport.

The government has offered no authority suggesting that a litigant may not take advantage of a statutory interpretation that was guided by the principle of constitutional avoidance when that litigant's case does not present the constitutional problem that prompted the statutory interpretation. Our obligation to abide by the Supreme Court's holding in *Zadvydas* is all the more stringent because the Court interpreted a statute that Congress may change as it pleases. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 172–73, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) ("Considerations of stare decisis have special force in the area of statutory interpretation, for [ ] unlike in the context of constitutional interpretation ... Congress remains free to alter what we have done.").

In enacting § 1231(a)(6), Congress chose to treat all of the categories of aliens the same. The Supreme Court chose to interpret the statute to avoid a constitutional collision. We cannot choose to ignore the language of the statute or the holding of the Supreme Court. Should Congress decide that differential treatment is in order, it can amend the statute, subject to constitutional considerations. But a decision to rear-range or rewrite the statute falls within the legislative, not the judicial, prerogative.

## III.

In holding that § 1231(a)(6) does not permit Lin's continued detention, it is important to emphasize a point made by the Supreme Court in *Zadvydas*—we do not now confront a situation presenting any national security "or other special circumstances where special arguments might be made for forms of preventive detention." *Zadvydas,* 533 U.S. at 696, 121 S.Ct. 2491. Indeed, the Supreme Court's reference was almost prescient since just months after *Zadvydas* was handed down, Congress passed legislation providing for the mandatory detention of suspected terrorists. Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act (USA PATRIOT), Pub.L. No. 107–56, tit. IV, § 412 (2002) (codified as 8 U.S.C. § 1226a(a)(2)). We express no view on this legislation but note it simply to underscore the scope of our holding.

■■■ It is also significant that our interpretation of § 1231(a)(6) does not require that Lin be released from INS custody. Initially, we note that "[t]he choice ... is not between imprisonment and [Lin] 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated." *Zadvydas,* 533 U.S. at 696, 121 S.Ct. 2491 (citation omitted).[5] And, under the parameters established in *Zadvydas,* Lin's continued detention is permissible if his removal is reasonably foreseeable. *Id.* at 699–701, 121 S.Ct. 2491. He has the burden to provide "good reason to believe

4. Under the INA's pre-IIRIRA incarnation, Lin would almost certainly have been deemed an excludable alien. Lin attempted to enter Guam by sea after having been to the Commonwealth of Northern Mariana Islands. For the purposes of immigration law the Mariana Islands are considered outside the Unit-

ed States. 8 U.S.C. § 1101(a)(38) (1994); *see also* 8 U.S.C. § 1101(a)(38) (2002).

5. A violation of supervised release conditions, of course, may result in a detainee's being redetained. *Zadvydas,* 533 U.S. at 700, 121 S.Ct. 2491.

that there is no significant likelihood of removal in the reasonably foreseeable future;" the government must then "respond with evidence sufficient to rebut [the detainee's] showing." *Id.* at 701, 121 S.Ct. 2491.

"[F]or the sake of uniform administration in the federal courts," and based on its reading of Congress's probable intent, the Court created a "presumptively reasonable period of detention" of six months. *Id.* at 680, 701, 121 S.Ct. 2491. The government urges us to fashion a longer period for detainees who are removable on account of inadmissibility and we can understand the policy basis for so doing. The government, however, offers no authority that might guide us in making what, for all intents and purposes, is a legislative determination. *Cf. Landon,* 459 U.S. at 34–35, 103 S.Ct. 321("The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness ... and does not extend to imposing procedures that merely displace congressional choices of policy."). Based on the applicability of § 1231(a)(6) to Lin and the Supreme Court's reading in of a six-month limitation, we hold that the six-month presumption applies with regard to Lin.[6] The upshot of this presumption is not, however, release, but rather consideration of release and appropriate conditions.

Having spent considerably more than six months in detention, Lin is entitled to make a showing in federal court that his removal to China is not reasonably foreseeable. We make no prediction whether Lin will be able to make such a showing. The INS alleges that China regularly accepts the return of its citizens that have been ordered removed from the United States and that Lin's failure to cooperate

in obtaining travel documents accounts for his protracted detention. Lin disputes both assertions. These are ultimately factual questions that we leave for the district court.

■ **REVERSED** and **REMANDED**.

GOULD, Circuit Judge, concurring.

I join noting that the basis for relief here is solely statutory, what Congress has ordained, and that we have no occasion in this case to address whether aliens in the position of Lin have any assertable constitutional protections.

RYMER, Circuit Judge, dissenting.

Sensible though it may sound to construe the same statute the same way for all purposes, inadmissible aliens are different from *admitted* aliens. For this reason, I disagree that we must interpret 8 U.S.C. § 1231(a)(6)'s provision for post-removal-period detention of *inadmissible* aliens as having the same "reasonable time" limitation that applies to *admitted* aliens. Instead, I take the Supreme Court at its word: while indefinite detention raises serious constitutional questions in the case of aliens who have been admitted to the United States, "[a]liens who have not yet gained initial admission to this country would present a very different question." *Zadvydas v. Davis,* 533 U.S. 678, 682, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). This is because aliens who have entered the country have constitutional rights that aliens who have not entered do not. As the Court explained:

> The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. It is well established that certain constitu-

---

**6.** This holding does not, however, absolve the INS of its statutory duty to effect the physical removal of individuals ordered removed with-

in the statutorily specified 90–day "removal period." 8 U.S.C. § 1231(a)(1)(A).

tional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

*Id.* at 693, 121 S.Ct. 2491 (citations omitted).

In *Zadvydas,* the Court chose to avoid constitutional concerns for *admitted* aliens by construing the statute to contain a "reasonable time" limitation. Here, we are dealing with *inadmissible* aliens, for whom the same constitutional questions do not arise. It is well settled that the United States may constitutionally detain an excludable (inadmissible) alien indefinitely if his country of origin refuses to accept his return. *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953). *Zadvydas* distinguished *Mezei* and declined to reconsider its continuing legal authority. *Zadvydas,* 533 U.S. at 693–94, 121 S.Ct. 2491. Accordingly, in this case we lack both the same constitutional problem that animated *Zadvydas's* limiting construction of § 1231(a)(6)'s application to *admitted* aliens, and the same license to interpret § 1231(a)(6)'s application to *inadmissible* aliens more restrictively than it is plainly written.

Unlike the majority, I do not read the Court's interpretation of § 1231(a)(6) in *Zadvydas* as "categorical." The Court's opinion was not unqualified; it said that inadmissible aliens "present a very different question" and that being inadmissible "made all the difference." *Id.* at 682, 693, 121 S.Ct. 2491. Nor do I believe that *Zadvydas* leaves us "little choice" but to conclude that it applies to inadmissible

aliens. We do have a choice because the Court's interpretation was discrete to *admitted* aliens. It was driven by the need to avoid constitutional problems that pertain to those who are admitted—but that do not pertain to those who are *not* admitted. By invoking the constitutional avoidance doctrine, the Court was trying to effectuate legislative intent yet assure constitutional application to *admitted* aliens. The result is a nuanced interpretation of § 1231(a)(6) that keeps it from being applied unconstitutionally but otherwise leaves it alone. When a statute has different applications, it is not necessary to say that it is categorically infirm; it is only the constitutionally problematic aspects which are subject to the construction that avoids the problem.

This is well illustrated by *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), which *Zadvydas* treats as the leading case on the principle of avoiding a statutory construction that raises a serious constitutional concern. At issue there was the newly enacted Longshoremen's and Harbor Workers' Compensation Act (Act of March 4, 1927, c. 509, 44 Stat. 1424 (codified as amended at 33 U.S.C. §§ 901–950)), which vested deputy commissioners of the United States Employees' Compensation Commission with "full power and authority to hear and determine all questions" in claims for workers' compensation benefits. The Court recognized that a constitutional problem would arise if the statute were construed to foreclose judicial review of jurisdictional facts, but avoided that problem by construing the statute to make an implicit exception for just those findings. This left the statute intact as to all other findings. As I see it, that is what the Court did in *Zadvydas* as well. It recognized that there was serious constitutional doubt about the indefinite detention of admitted aliens who had been ordered

removed (or deported), but avoided the problem by construing the statute to have an implicit time limitation after which the alien must be released if there is no significant likelihood of removal in the reasonably foreseeable future. However, the Court left the law—and, it seems to me, the statutory scheme—intact with respect to aliens who have never been admitted to the United States.

For similar reasons, stare decisis lacks the force in this case that the majority ascribes to it. While true that stare decisis carries particular sway in areas of statutory interpretation because Congress can alter the result, nothing about *Zadvydas*'s construction for *admitted* aliens would have alerted Congress to the need to amend § 1231(a)(6) with respect to the "very different question" of *inadmissible* aliens.

I am not persuaded to the contrary by Justice Kennedy's dissent, which gives my colleagues solace but strikes me as a *reductio ad absurdum* rather than a fair gauge of how broadly we are required to read *Zadvydas*. Indeed, Justice Breyer's opinion for the majority emphasizes that "the cases before us [do not] require us to consider the political branches' authority to control entry into the United States. Hence we leave no 'unprotected spot in the Nation's armor.'" *Zadvydas*, 533 U.S. at 695–96, 121 S.Ct. 2491 (citation omitted). Given this, I cannot see how *Zadvydas* leaves *us* no choice but to create the very "unprotected spot in the Nation's armor" that the Court thought *it* was leaving the Nation without. *Id.*

Creating an "unprotected spot in the Nation's armor" is what this ruling does. We recently explained why in *Barrera–Echavarria v. Rison*, 44 F.3d 1441 (9th Cir.1995) (en banc):

Reading a time limit on detention into § 1227[which provided for immediate deportation of excludable aliens unless the Attorney General concludes that it is not practicable or proper] would risk frustrating the government's ability to control immigration policy and relations with foreign nations. A judicial decision requiring that excludable aliens be released into American society when neither their countries of origin nor any third country will admit them might encourage the sort of intransigence Cuba has exhibited in negotiations over the Mariel refugees. *See, e.g., Jean v. Nelson*, 727 F.2d 957, 975 (11th Cir.1984) (en banc) ("[T]his approach would ultimately result in our losing control of our borders. A foreign leader could eventually compel us to grant physical admission via parole to any aliens he wished by the simple expedient of sending them here and then refusing to take them back."), *aff'd*, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985). In an area with sensitive foreign policy implications, we must hesitate to interpret an ambiguous statutory scheme as requiring such a result.

*Barrera–Echavarria*, 44 F.3d at 1448.

The majority discounts *Barrera–Echavarria* because the statute has changed and "excludable" aliens have become "inadmissible;" "entry" has been replaced by "admission" and been redefined as "the lawful entry of [an] alien into the United States after inspection and authorization by an immigration officer," *compare* 8 U.S.C. §§ 1101(a)(13), 1182 (1994) *with* 8 U.S.C. §§ 1101(a)(13)(A), 1182 (2002); and *Barrera–Echavarria* predates *Zadvydas*. However, while *Barrera–Echavarria*'s statutory analysis may no longer be relevant, its rationale is alive and well. IIRIRA does not affect that rationale, because

IIRIRA tightened, rather than loosened, removal procedures. And *Zadvydas* distinguished *Mezei* on the basis that Mezei's excludable status "made all the difference." *Zadvydas*, 533 U.S. at 693, 121 S.Ct. 2491. To me, this means that both *Mezei and Barrera–Echavarria* are still good law.[1]

This being so, there is no need to construe § 1231(a)(6) to avoid due process concerns for inadmissible aliens.[2] Aliens such as Lin have never resided freely within this country. Ideally, they should be returned as soon as possible to their own country. However, this can't happen if their own country won't allow it. For reasons explained in *Barrera–Echavarria* which are compelling to me, Congress has given the Attorney General the discretion to detain or parole persons who are not admitted into this country and whose country will not take them back. I would not

fetter that discretion by presumptively requiring their release into this country after six months. Congress did not prescribe it, nor does a serious constitutional doubt compel it, and we have no call to construe § 1231(a)(6) to contain this limitation for inadmissible aliens.

Because holding otherwise judicially mandates a dramatic shift in immigration policy, I dissent.

---

1. *See Ma v. Ashcroft*, 257 F.3d 1095, 1108 n. 22 (9th Cir.2001) (treating *Barrera–Echavarria*'s constitutional analysis as good law because it "was dictated by the Supreme Court's holding in *Mezei* ...."); *Hoyte–Mesa v. Ashcroft*, 272 F.3d 989, 991 (7th Cir.2001) (*Mezei* and prior Seventh Circuit authority upholding indefinite detention of excludable aliens remain good law).

2. Inadmissible aliens are not detained without any process at all. An administrative review procedure is in place. *See* 8 C.F.R. 241.4. INS regulations provide for an initial records review of inadmissible aliens prior to the expiration of the 90–day removal period (which is tolled until the alien cooperates in obtaining the necessary travel papers). The district director's decision granting or denying the alien's request for release must set forth reasons for continued detention. If release is denied, the district director may retain authority for up to three months after the removal period, but if the alien is not released within that time his case is referred to the Executive Associate Commissioner, acting through the Headquarters Post–Order Detention Unit (HQPDU). The alien is then given

another records review. If release is not recommended, a Review Panel interviews the alien, who may have a representative present. The Panel then makes a recommendation and the Executive Associate Commissioner makes the final determination. Thereafter, HQPDU must review the alien's case annually, but the alien may request review based on changed circumstances every three months and HQPDU must respond within 90 days. HQPDU may conduct more frequent reviews if prompt removal is practicable, proper, or other good cause appears.

The decision whether to release an alien is discretionary and non-appealable. However, the INS may not release an alien unless the alien demonstrates that he is not a danger to the community or a flight risk, and not before considering numerous factors that militate for and against release. The Service's determination that an alien is likely to receive travel documents by itself can warrant continuation of detention, and if it is established at any stage in a custody review that travel documents can be obtained or are forthcoming, the alien will generally not be released. at least