**TUAN THAI, also known as Anh Tuan Thai, also known as Anh Thai Tuan, Petitioner–Appellee,**

v.

**John ASHCROFT, Attorney General,\* Respondent–Appellant.**

No. 03–35626.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 6, 2004.

Filed May 3, 2004.

The Clerk shall amend the docket to reflect the above caption.

Jacqueline R. Dryden, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for the respondent-appellant.

Jay W. Stansell, Assistant Federal Public Defender, Seattle, WA, for the petitioner-appellee.

Before HUG, GRABER, and CLIFTON, Circuit Judges.

CLIFTON, Circuit Judge:

This case requires us to consider whether 8 U.S.C. § 1231(a)(6), as construed by

the Supreme Court in *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), authorizes the continued and potentially indefinite detention of an alien based on a determination that the alien's mental illness makes him specially dangerous to the community. We conclude that the statute does not provide such authority.

When a removal order has been entered against an alien, § 1231(a)(6) authorizes the Government to detain that alien beyond the statutory removal period. The Government's ability to detain an alien pursuant to § 1231(a)(6) is not unlimited, however. In *Zadvydas,* the Supreme Court held that, in order to avoid a "serious constitutional threat," § 1231(a)(6) must be construed as limiting an alien's post-removal-period detention to the period reasonably necessary to remove the alien from the United States. *Zadvydas,* 533 U.S. at 699, 121 S.Ct. 2491.

The Court further held that the statute did not authorize extended detention of an alien subject to an order of removal if it is not reasonably foreseeable that the removal will be accomplished. *Id.* In the case at hand, Petitioner Tuan Thai's post-removal-period detention has exceeded sixteen months despite the fact that his removal is not reasonably foreseeable. The Government contends that Thai's continued detention is nonetheless permissible because the *Zadvydas* ruling recognized an exception that allows for the indefinite detention of an alien under special circumstances, such as the existence of a mental illness which makes the alien a danger to the community. We read *Zadvydas* differently and hold that the Supreme Court's statutory construction of § 1231(a)(6) does not authorize the continued detention of Thai, and we therefore affirm the District Court's grant of Thai's habeas petition.

## I. BACKGROUND

Petitioner Thai is a native and citizen of Vietnam. Thai left Vietnam without a Vietnamese passport or exit visa and entered the United States as a lawful permanent resident pursuant to the Amerasian Immigration Act.[1] Since his entry into the United States in 1996, Thai has established a record as a violent criminal, accumulating convictions for assault, harassment, and third-degree rape. When Thai finished serving his state sentences, the Government took him into custody and initiated removal proceedings.

After a hearing, the Immigration Judge found Thai removable due to his aggravated felony convictions and ordered Thai removed to Vietnam. Thai waived his right to appeal and the order of removal became final on November 1, 2002. The validity of that removal order is not at issue here.

The Government requested travel documents for Thai from the Consulate General of Vietnam. Due to the lack of a repatriation agreement between the United States and Vietnam, however, Vietnamese officials have not responded. The Government does not dispute that Thai's removal is not reasonably foreseeable at this point.

In December 2002, Thai filed a habeas petition in the District Court pursuant to 28 U.S.C. § 2241, challenging his continuing detention under *Zadvydas.* After hearing oral argument, the District Court granted Thai's habeas petition and ordered

---

1. Congress enacted the "Amerasian Immigration Act," Pub.L. No. 97–359, 96 Stat. 1716 (1982) (codified at 8 U.S.C. § 1154(f)), in order to address the plight of Amerasian children left behind in Southeast Asia after Amer-ican forces withdrew. *See Chau v. INS,* 247 F.3d 1026, 1028 n. 4, 1030 (9th Cir.2001). The Act is designed to allow Amerasian children to immigrate into the United States.

his release. In its ruling, the District Court noted that the Government "cannot offer any evidence that the government of Vietnam will issue travel documents in the reasonably foreseeable future." The District Court concluded that because *Zadvydas* had interpreted § 1231(a)(6) to forbid continued detention once the alien's removal was determined to be unlikely in the reasonably foreseeable future, the detention regulations upon which the Government relied were not valid.[2]

The Government appealed and this court granted the Government's motion for a stay of the District Court's order pending the appeal's resolution. Meanwhile, the Government initiated continued detention proceedings against Thai pursuant to 8 C.F.R. §§ 241.14(f), *et seq.*, citing its belief that his release might pose a danger to the community.[3] The § 241.14(f) proceedings were designed to assess Thai's mental health and future dangerousness, and after a series of hearings, the Immigration Judge concluded that the Government had established by clear and convincing evidence that Thai's release would pose a special danger to the public, and that Thai's continued and potentially indefinite detention was therefore justified.

## II. DISCUSSION

■ This court reviews de novo a district court's decision to grant or deny a petition for writ of habeas corpus. *See*

*Taniguchi v. Schultz,* 303 F.3d 950, 955 (9th Cir.2002).

### A. 8 U.S.C. § 1231(a)(6)

■ When a final order of removal has been entered against an alien, the Government must facilitate that alien's removal within a 90–day "removal period." *See Xi v. INS,* 298 F.3d 832, 834–35 (9th Cir.2002) (citing 8 U.S.C. § 1231(a)(1)). During this removal period, the Government must detain that alien until he or she is actually removed. *See* 8 U.S.C. § 1231(a)(2). In situations where removal cannot be accomplished within 90 days, detention beyond the removal period is authorized by § 1231(a)(6), which provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or conditions of entry, for committing a criminal offense, or for reasons of national security or foreign policy,] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas,* the Supreme Court considered the habeas petitions of Kestutis Zadvydas and Kim Ho Ma, two resident aliens who challenged the constitutionality

2. Although the District Court's decision assumed that Thai's continued detention was based on 8 C.F.R. § 241.4(a)(4), the Government invoked the procedures in 8 C.F.R. § 241.14(f) when it opposed Thai's habeas petition. In this appeal, the Government continues to rely on § 241.14(f) in order to justify Thai's detention.

3. Following the *Zadvydas* decision, the Government promulgated 8 C.F.R. §§ 241.14(f), *et seq.*, in November 2001. *See* 66 Fed.Reg.

56967 (Nov. 21, 2001). The regulations provide in relevant part:

> Subject to the review procedures provided in this section, the Service shall continue to detain an alien if the release of the alien would pose a special danger to the public, because ... [d]ue to a mental condition or personality disorder and behavior associated with that condition or disorder, the alien is likely to engage in acts of violence in the future[.]

8 C.F.R. § 241.14(f)(1)(ii).

of their § 1231(a)(6) detentions. Although no country was willing to accept either alien once they were ordered removed, the Government continued to detain Zadvydas and Ma for years after the expiration of § 1231(a)(1)'s 90–day removal period. *See Zadvydas,* 533 U.S. at 684–86, 121 S.Ct. 2491. The *Zadvydas* Court reasoned that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause. *Id.* at 690, 121 S.Ct. 2491. Applying the constitutional avoidance doctrine in order to avoid this potential problem, *Zadvydas* held that § 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal" and "does not permit indefinite detention." *Id.* at 689, 121 S.Ct. 2491. *Zadvydas* then concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [§ 1231(a)(6)]." *Id.* at 699, 121 S.Ct. 2491.

The Government acknowledges that, under *Zadvydas,* a presumptively reasonable period of post-removal detention is limited to six months, and that after this period expires, an alien must be released if there is no significant likelihood of removal in the reasonably foreseeable future. Thai's period of post-removal-period detention reached six months as of May 2003. Nonetheless, the Government contends that *Zadvydas* "contains an exception to the presumptive six-month rule for particularly dangerous individuals where there are circumstances, such as mental illness, that help to create the danger." The Government argues that the regulations in 8 C.F.R. §§ 241.14, *et seq.*—which provide for the detention of aliens deemed "specially dangerous"—were specifically promulgated in light of this alleged exception

and, thus, that Thai's continued and potentially indefinite detention is authorized.

## B. The *Zadvydas* decision

The Government's contention that *Zadvydas* recognized an exception for "special circumstances" applicable to Thai is premised upon the Government's interpretation of two separate passages in the opinion. We will address each passage in turn.

### 1. "Harm-threatening Mental Illness"

■ According to the Government, *Zadvydas* held that continued post-removal-period detention of an alien beyond the presumptively reasonable period of six months was not authorized under § 1231(a)(6) *unless* there exist certain "special and narrow nonpunitive circumstances" in which a special justification, such as the presence of a "harm-threatening mental illness," outweighs the alien's constitutionally protected interest in avoiding physical restraint.

The passage that the Government quotes, however, immediately followed a statement in the *Zadvydas* opinion that there was "serious doubt" as to 8 U.S.C. § 1231(a)(6)'s constitutionality, and that the Court had to " 'first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.' " *Zadvydas,* 533 U.S. at 689, 121 S.Ct. 2491 (quoting *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932)). It was at the outset of this exercise in constitutional avoidance that the Supreme Court stated:

> A statute permitting indefinite detention of an alien would raise a serious constitutional problem . . . . And this Court has said that government detention violates [the Due Process] Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, or, in certain special and

"narrow" nonpunitive "circumstances," where a special justification, such as harm-threatening mental illness, outweighs the "individual's constitutionally protected interest in avoiding physical restraint."

The proceedings at issue here are civil, not criminal, and we assume that they are nonpunitive in purpose and effect. There is no sufficiently strong special justification here for indefinite civil detention—at least as administered under this statute.

*Id.* at 690, 121 S.Ct. 2491 (emphasis in original) (internal citations omitted).

When the passage is read in context, the Government's contention that this passage created a "harm-threatening mental illness" exception to the general holding in *Zadvydas* is unconvincing. The passage that the Government quotes was not a description of the scope of the Government's authority under § 1231(a)(6). Rather, *Zadvydas* was merely re-stating settled constitutional principles and explaining that the Government's ability to detain individuals is generally subject to the limitations imposed by the Due Process Clause. The statement in *Zadvydas* that noncriminal detention by the Government is permissible only in narrow nonpunitive circumstances was intended to illustrate what the Government is generally *prohibited* from doing, and what it may in some circumstances be permitted to do. It did not state what the Government is authorized to do under § 1231(a)(6). Any suggestion otherwise directly contradicts the Supreme Court's subsequent observation that "[t]here is no sufficiently strong special justification *here* for indefinite civil detention—at least as administered under *this statute*." *Id.* (emphasis added).

Ironically enough, the *Zadvydas* Court's acknowledgment that certain civil detention schemes are permissible under limited and "special circumstances" served as a juxtaposition to § 1231(a)(6)'s potentially tremendous scope. For instance, the Court made the following observation about § 1231(a)(6):

The civil confinement here at issue is not limited, but potentially permanent. The provision authorizing detention does not apply narrowly to "a small segment of particularly dangerous individuals," say, suspected terrorists, but broadly to aliens ordered removed for many and various reasons, including tourist visa violations.

*Id.* at 691 (internal citations omitted). It was this overbreadth which led the *Zadvydas* Court to conclude that § 1231(a)(6) presented a "serious constitutional threat" in the first place. *Id.* at 699.

In sum, despite the Government's contentions to the contrary, the reference in *Zadvydas* to special justifications and harm-threatening mental illnesses was not a statement of what § 1231(a)(6) authorizes. It was instead, an explanation of why the Court felt it was necessary to construe the statute narrowly. *See id.* ("Consequently, interpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.").

**2. "Terrorism or Other Special Circumstances"**

 The second passage on which the Government relies appears in the same section of *Zadvydas* and provides in relevant part:

[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions. ... Rather, the issue we address is whether aliens that the

Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States.

Nor do the cases before us require us to consider the political branches' authority to control entry into the United States. Hence we leave no unprotected spot in the Nation's armor. Neither do we consider *terrorism or other special circumstances* where special arguments might be made for forms of preventive detention and for heightened deference to the judgments of the political branches with respect to *matters of national security.* The sole foreign policy consideration the Government mentions here is the concern lest courts interfere with "sensitive" repatriation negotiations.

*Id.* at 695–96, 121 S.Ct. 2491 (emphasis added) (internal citations and quotation marks omitted).

The Government argues that this passage implies that the *Zadvydas* Court would have ruled differently if it had been faced with "terrorism or other special circumstances." We do not know, if confronted with a case that did raise "terrorism or other special circumstances," whether the Supreme Court would have concluded that the Government was authorized under § 1231(a)(6) to continue to

detain both Zadvydas and Ma.[4] We need not address this issue in the case at hand, however, because Thai's case, like those of Zadvydas and Ma, does not require us to consider issues of "terrorism or other special circumstances."

A careful reading of *Zadvydas* reveals that the Court's mention of heightened deference in situations of "terrorism or other special circumstances" was strictly limited to the context of "matters of national security." *Id.* at 696, 121 S.Ct. 2491 ("Neither do we consider *terrorism or other special circumstances* where special arguments might be made for forms of preventive detention and for heightened deference to the judgments of the political branches with respect to *matters of national security.*") (emphasis added). Nor does the Government appear to contest such a reading of the law. Indeed, it attempts to justify Thai's continued detention by arguing that Thai's mental condition and personality disorder make him a danger to the community and a "national security" concern for that reason alone.

We do not agree that the danger of criminal conduct by an alien is automatically a matter of national security, as that term was used in *Zadvydas.* The Supreme Court addressed nearly identical justifications for continued detention in

---

4. It could be that the Supreme Court only intended to leave open the possibility that a different statute, which unlike § 1231(a)(6) was narrowed to specifically address terrorism and matters of national security, would be able to avoid the constitutional problems which threatened § 1231(a)(6). Indeed, this court suggested as much in *Xi v. INS*, 298 F.3d 832 (9th Cir.2002), where we held:

> In holding that § 1231(a)(6) does not permit [an alien's] continued detention, it is important to emphasize a point made by the Supreme Court in *Zadvydas*—we do not now confront a situation presenting any national security "or other special circumstances where special arguments might be

made for forms of preventive detention." Indeed, the Supreme Court's reference was almost prescient since just months after *Zadvydas* was handed down, Congress passed legislation providing for the mandatory detention of suspected terrorists. Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act (USA PATRIOT), Pub.L. No. 107–56, tit. IV, § 412 (2002) (codified as 8 U.S.C. § 1226a(a)(2)). We express no view on this legislation but note it simply to underscore the scope of our holding.

*Id.* at 839 (internal citations omitted).

that case. Kestutis Zadvydas was a resident alien with a long criminal record whose continued detention by the Government was based on a history of flight from both criminal and deportation proceedings. *Id.* at 684, 121 S.Ct. 2491. Kim Ho Ma was a resident alien who had been convicted of manslaughter for a gang-related shooting. The Government attempted to justify his potentially indefinite detention due to its belief that Ma could not remain nonviolent and that he would violate conditions of release. *Id.* at 685–86, 121 S.Ct. 2491. The *Zadvydas* Court rejected the Government's arguments with respect to both aliens and held that § 1231(a)(6) simply did not authorize an alien's potentially indefinite detention, even if such detention were premised on "protecting the community from dangerous aliens." *Id.* at 697, 121 S.Ct. 2491. Notably, in so holding, *Zadvydas* explicitly stated that the situations posed by Ma and Zadvydas *did not* require them to consider "terrorism or other special circumstances" implicating "matters of national security." *Id.* at 696, 121 S.Ct. 2491.

The Government's current attempts to justify Thai's detention are indistinguishable from its unsuccessful arguments in *Zadvydas.* The Government claims that Thai must be detained because he poses a threat to the community due to his propensity for violence. Just as that argument failed before the Supreme Court regarding Ma, it must fail now. Like Ma, Thai is an ordinary violent criminal. If a need to protect the community did not justify the detention of Ma—a killer—under § 1231(a)(6), it similarly does not justify the detention of Thai. Though the Government now makes the additional allegation that Thai's dangerousness is a result of his mental condition, the presence of a personality disorder does not transform Thai's case into a matter of national security. In rejecting the Government's proffered justi-fications for Thai's detention, we do not intend to imply that rape and assault are not serious crimes; we simply conclude that such crimes, whether they are committed by United States citizens or by resident aliens, are not per se matters of national security.

C. The Application of *Zadvydas* to Thai

After determining that matters of national security were not implicated, *Zadvydas* proceeded to construe § 1231(a)(6) in the following manner:

> We have found nothing in the history of [§ 1231(a)(6) ] that clearly demonstrates a congressional intent to authorize indefinite, perhaps permanent, detention. Consequently, interpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.

*Id.* at 699, 121 S.Ct. 2491. Because we similarly conclude that Thai's case is not a matter of national security, we must faithfully apply the Supreme Court's authoritative statement of what § 1231(a)(6) does and does not authorize under these circumstances. *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994) ("It is [the Supreme Court's] responsibility to say what a statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law. A judicial construction of a statute is an authoritative statement of what the statute mean[s]. . . ."); *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160, 6 L.Ed. 289 (1825) ("[T]he construction given by this Court to the constitution and laws of the United States is received by all as the true construction . . . .").

Our previous applications of *Zadvydas* have recognized the broad scope of its ban

against continued and potentially indefinite detentions. *See Xi*, 298 F.3d at 836 ("The Supreme Court's *unqualified holding* provides that[§ 1231(a)(6)] 'does not permit indefinite detention.' It is a venerable principle of statutory interpretation 'that where the Legislature makes a plain provision, without making any exception, the courts can make none.' ") (citations omitted) (emphasis added); *Ma v. Ashcroft*, 257 F.3d 1095, 1102 (9th Cir.2001) (holding that "the INS lacks authority" under § 1231(a)(6) to detain a resident alien for more than a "reasonable time" beyond the removal period if there is "no reasonable likelihood that the alien will be removed in the reasonably foreseeable future"). It is also noteworthy that, although federal circuit courts have split over the issue of whether the *Zadvydas* ruling extends to inadmissible aliens, no court has ever qualified *Zadvydas* with respect to resident aliens such as Thai.[5]

■ As explained above, the Government has failed to persuade us that the limitations that the Supreme Court read into § 1231(a)(6) need not be applied to Thai. We do not believe that *Zadvydas* can properly be read to prohibit the indefinite detention of dangerous resident aliens like Ma, while allowing the indefinite detention of dangerous resident aliens like Thai. An alien's ill mental health coupled with dangerousness cannot justify indefinite detention under *Zadvydas* when dangerousness alone cannot justify such detention. *See, e.g., Zadvydas*, 533 U.S. at 708, 121 S.Ct.

2491 (Kennedy, J., dissenting) ("Under the majority's view … it appears the alien must be released in six months even if presenting a real danger to the community."); *id.* at 714, 121 S.Ct. 2491 ("The rule the majority creates permits consideration of nothing more than the reasonable foreseeability of removal."). Therefore, because *Zadvydas* construed § 1231(a)(6) to forbid the post-removal-period detention of an alien once removal is no longer reasonably foreseeable, *Zadvydas*, 533 U.S. at 699, 121 S.Ct. 2491, and because the Government does not dispute that Thai's removal is not reasonably foreseeable, we hold that Thai's continued detention is not authorized under § 1231(a)(6).

**D. The Detention Regulations in 8 C.F.R. § 241.14(f)**

■ Having concluded that § 1231(a)(6) does not authorize Thai's continued detention, we turn our attention to the civil commitment regulations in 8 C.F.R. §§ 241.14(f), *et seq.* It is beyond dispute that a federal regulation cannot empower the Government to do what a federal statute prohibits it from doing. *See e.g., Public Citizen v. Dep't of Transp.*, 316 F.3d 1002, 1031 (9th Cir.) (holding that EPA regulations do not allow the agency to act contrary to federal statute), *cert. denied,* — U.S. ——, 124 S.Ct. 957, 157 L.Ed.2d 793 (2003). When such a conflict occurs, it is the statute's meaning that must control. *Farrell v. United States*, 313 F.3d 1214, 1219 (9th Cir.2002); *Microsoft Corp. v. Comm'r*, 311 F.3d 1178, 1189

**5.** Our court in *Xi*, 298 F.3d at 836, and the Sixth Circuit in *Rosales–Garcia v. Holland*, 322 F.3d 386, 414 (6th Cir.) (en banc), *cert. denied*, 539 U.S. 941, 123 S.Ct. 2607, 156 L.Ed.2d 627 (2003), both held that the *Zadvydas* ban on continued detention applied to inadmissible aliens as well as resident aliens. In contrast, the Eleventh Circuit in *Benitez v. Wallis*, 337 F.3d 1289, 1299 (11th Cir.2003), *cert. granted,* — U.S. ——, 124 S.Ct. 1143,

157 L.Ed.2d 966 (2004), and the Eighth Circuit in *Borrero v. Aljets*, 325 F.3d 1003, 1007 (8th Cir.2003), have held that *Zadvydas* does not prohibit continued federal detention of inadmissible aliens. Because Thai is a resident alien, however, there is no reason to believe that other courts would fail to hold that *Zadvydas* prohibits his continued and potentially indefinite detention.

(9th Cir.2002). Because the Government may not detain Thai under § 1231(a)(6), the § 241.14(f) regulations, which were enacted under the authority of that statute, cannot authorize Thai's continued and potentially indefinite detention.

## III. CONCLUSION

Because Thai's removal is not reasonably foreseeable, his continued post-removal-period federal detention is not authorized by 8 U.S.C. § 1231(a)(6). We note that our ruling that the Federal Government may not continue to detain him will not necessarily mean that Thai may be allowed to harm the community. The Government may still subject Thai to supervision with conditions after he is released from detention and incarcerate him for violation of those conditions. *See Zadvydas*, 533 U.S. at 695, 121 S.Ct. 2491; 8 U.S.C. § 1231(a)(3). In addition, the State of Washington, in which Thai was residing at the time he was taken into custody, has its own procedures for the involuntary commitment of mentally ill patients, as well as procedures designed to involuntarily commit violent sexual predators. *See* Wash. Rev.Code §§ 71.05.150 and 71.09.060.

We also do not speak to the possibility that Congress could enact a statute that explicitly allows for federal civil commitment of aliens who pose a danger to the community due to their mental conditions. We simply hold that 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court, does not authorize such detention.

**AFFIRMED.**[6]

---

6. After oral argument, the Government transferred Thai, over his objections, to Columbia, South Carolina for mental health treatment. Pursuant to his request, which the Government does not appear to oppose, we order the Government to return Thai to the Western District of Washington for his release.