# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 28, 2008

Charles R. Fulbruge III
Clerk

No. 06-30361

HA TRAN,

Petitioner-Appellee,

v.

MICHAEL B MUKASEY, US ATTORNEY GENERAL; JAMES W ZIGLAR; CRAIG ROBINSON; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

Respondents-Appellants

Appeal from the United States District Court
for the Western District of Louisiana

Before JONES, Chief Judge, and DeMOSS and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Respondents-Appellants United States Attorney General Michael Mukasey, the Department of Homeland Security/Bureau of Immigration Customs Enforcement ("BICE"), BICE Commissioner James W. Ziglar, and BICE Louisiana Field Officer Craig Robinson (hereinafter "the Government") challenge the district court's grant of habeas relief to Ha Tran. To resolve this issue, we must determine whether 8 U.S.C. § 1231(a)(6), as construed by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678 (2001), authorizes the continued and potentially indefinite detention of a removable alien based on a

determination by the government that the alien's mental illness renders him a dangerous risk to the community. In light of Zadvydas and its progeny, we conclude that it does not.

## I.  Factual and Procedural Background

The facts underlying this appeal are undisputed. Ha Tran, a native and citizen of Vietnam, was admitted to the United States as a refugee on August 12, 1975. On September 20, 1978, Tran became a lawful permanent resident. Tran was convicted of firearm possession and assault and battery against his wife on October 24, 1984. As a result, Tran was confined to a mental hospital for two years where he was diagnosed with a mental illness. Thereafter, he was transferred to a halfway house for six months. One day after his release from the halfway house, Tran murdered his wife in the presence of their seven-year-old daughter. Tran pled guilty to manslaughter and was sentenced to eighteen to twenty years in prison on May 22, 1989.

Before Tran completed his sentence, the Department of Homeland Security ("DHS") took him into custody and initiated deportation proceedings. On February 2, 1998, based on his conviction for a crime of violence, the immigration judge found Tran removable to France, and in the alternative, Vietnam. Tran did not appeal; thus his order of removal became final thirty days later. Both France and Vietnam, however, refused to accept him. Because DHS was unable to deport Tran, it continued to detain him.

On December 7, 2001, Tran sought release from DHS custody following the Supreme Court's decision in Zadvydas, which held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by [8 U.S.C. § 1231(a)(6)]." 533 U.S. at 689. In response, the Government initiated proceedings pursuant to 8 C.F.R. § 241.14(f), which provides for the continued detention of an alien who "due to a mental condition . . . is likely to engage in

acts of violence in the future[.]"[1] Tran was evaluated by a number of mental health professionals with the purpose of determining whether he would pose a threat to the public if released. Based on a finding that Tran's alleged mental illness would cause him to commit acts of violence in the future, the DHS issued a Decision to Continue Custody, acknowledging that although Tran was not likely to be removed in the foreseeable future, the DHS would continue to detain him under 8 C.F.R. § 241.14(f).

Pursuant to 8 C.F.R. 241.41(f)(4), the immigration judge ("IJ") reviewed DHS's decision and recommended that Tran be released.[2] The IJ pointed to a number of flaws in Tran's psychiatric evaluations in finding that the Government had failed to demonstrate that Tran's mental condition made him a special danger to the public. On appeal, the BIA vacated the IJ's ruling, finding that the Government had established by clear and convincing evidence that Tran had met the criteria for continued detention under § 241.14(f).

---

[1] In the wake of Zadvydas, the government promulgated a new regulatory scheme, which established procedures for the continued detention of certain removable aliens who were not likely to be removed in the reasonably foreseeable future. See 8 C.F.R. § 241.14(a); see also 66 Fed. Reg. 56967. These regulations provide in relevant part that DHS may continue to detain an alien determined to be "specially dangerous" if the following requirements are met:

> (i) The alien has previously committed one or more crimes of violence as defined in 18 U.S.C. 16;
> (ii) Due to a mental condition or personality disorder and behavior associated with that condition or disorder, the alien is likely to engage in acts of violence in the future; and
> (iii) No conditions of release can reasonably be expected to ensure the safety of the public.

8 C.F.R. § 241.14(j). The Government must satisfy each of these requirements by clear and convincing evidence. 8 C.F.R. § 241.14(i)(1). Before invoking the regulation, the alien must undergo a full medical and psychiatric evaluation. 8 C.F.R. 241.41(f)(3).

[2] Under 8 C.F.R. 241.41(f)(4), once the DHS has determined that continued detention is justified, this decision is reviewable by an immigration judge ("IJ") and the Board of Immigration Appeals ("BIA")

On October 22, 2004, Tran filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the district court. In his petition, Tran argued that his detention under 8 C.F.R. § 241.14(f) violated 8 U.S.C. § 1231(a)(6) as construed by the Supreme Court in Zadvydas because his removal was not reasonably foreseeable. Before the district court, the Government did not argue that Tran's detention was reasonably foreseeable, nor did they dispute the fact that Tran had been held beyond the presumptively reasonable six-month period established in Zadvydas. Rather, the Government argued that Tran's detention was authorized by Zadvydas's "express pronouncement that the Government may detain individuals for extended periods of time–even indefinitely–in special circumstances such as when the individuals are mentally ill and dangerous." The petition was transferred to a magistrate judge who concluded that 8 U.S.C. § 1231(a)(6) did not provide DHS with the authority to detain Tran indefinitely and recommended that Tran's petition be granted. The district court adopted the findings of the magistrate judge, ordering that Tran's habeas petition be granted and that he be released from federal immigration detention under an order of supervision imposing conditions set by the Government. The Government did not seek a stay of the district court's order.[3]

On appeal, the Government challenges the district court's grant of habeas relief to Tran on three grounds. First, the Government asserts that the district court ignored Supreme Court precedent, allowing continued detention in special circumstances. Second, pursuant to Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), the Government argues that the district court should have deferred to the Government's reasonable interpretation of 8 U.S.C. § 1231(a)(6). Finally, the Government contends that

---

[3] At oral argument, the panel was advised that Tran was being housed in a mental health facility in Massachusetts at that time.

4

the district court failed to uphold Congress's statutory intent to protect the public.   We will address each of the Government's arguments in turn.

## II.  Discussion

In a habeas appeal, we review the district court's findings of fact for clear error and review its conclusions of law de novo.  Gochicoa v. Johnson, 238 F.3d 278, 284 (5th Cir. 2000).

## A.

The Immigration and Naturalization Act provides that when a final order of removal has been entered against an alien, the government must facilitate that alien's removal from the United States within ninety days, a period generally referred to as the removal period.  8 U.S.C. § 1231(a)(1)(A).  Detention beyond the removal period is authorized under 8 U.S.C. § 1231(a)(6), which provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

Thus, this statute is applicable to three categories of aliens: (1) those ordered removed who are inadmissable under § 1182; (2) those ordered removed who are removable as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy; or (3) those ordered removed who are determined by the Attorney General to be a risk to the community or a flight risk.

In Zadvydas, the Supreme Court considered habeas petitions of two individuals, Kestutis Zadvydas and Kim Ho Ma, being held pursuant to the second category of § 1231(a)(6).  533 U.S. at 682-85.  Although both men were

found removable, no country would accept them; as a result, the government continued to detain them for years beyond the expiration of the 90-day removal period. In support of the continued detention of these men, the government argued that they "may be detained beyond the removal period" language of §1231(a)(6) authorized indefinite detention of a removable alien. The Court, however, concluded that it did not, reasoning that continued detention would present serious constitutional problems under the Fifth Amendment's Due Process Clause. Id. at 690. Applying the doctrine of constitutional avoidance, the court held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by the statute." Id. at 699. Zadvydas then concluded that six months was a presumptively reasonable period of detention, beyond the removal period, in which to effectuate deportation. Id. at 702.

In Clark v. Martinez, 543 U.S. 371 (2005), the Supreme Court was called upon to consider whether its decision in Zadvydas was also applicable to aliens in the first category of § 1231(a)(6). Writing for the majority, Justice Scalia explained that "[t]he operative language of § 1231(a)(6), 'may be detained beyond the removal period,' applies without differentiation to all three categories of aliens that are its subject" and that "[t]o give these same words a different meaning for each category would be to invent a statute rather than interpret one." Id. at 378. While the specific question before the Clark court related to the first category of aliens covered by § 1231(a)(6), the decision makes clear that the holding of Zadvydas, and consequently the presumptive six-month reasonable removal period, applies uniformly to all categories of aliens covered by the statute.

B.

Turning our attention to the present case, the Government first contends that the district court ignored Supreme Court precedent that allows for the continued detention of removable aliens in special circumstances. In particular,

6

the Government argues that Zadvydas permits an exception for the continued and potentially indefinite detention of an alien deemed specially dangerous due to a "harm-threatening mental illness." The Government argues that such a holding is justified in light of the following passage in Zadvydas:

> But we have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections. (citations omitted) In cases in which preventive detention is of potentially indefinite duration, we have also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps to create the danger. (citation omitted)

Id. at 691-92.

In Tuan Thai v. Ashcroft, 366 F.3d 790 (9th Cir. 2004), the Ninth Circuit rejected the same argument made by the Government here–that Zadvydas acknowledged an exception for the indefinite detention of an alien deemed specially dangerous due to an alleged mental illness. In so finding, the Ninth Circuit posited that the language cited by the Government as creating a "harm-threatening mental illness" exception was not a description of the scope of the Government's authority under § 1231(a)(6). The court explained that "Zadvydas was merely re-stating settled constitutional principles and explaining that the Government's ability to detain individuals is generally subject to the limitations imposed by the Due Process Clause." Id. The court went on to explain that:

> The statement in Zadvydas that noncriminal detention by the Government is permissible only in narrow nonpunitive circumstances was intended to illustrate what the Government is generally prohibited from doing, and what it may in some circumstances be permitted to do. It did not state what the Government is authorized to do under § 1231(a)(6).

Id. We agree. As pointed out by the Thai court, the Government's reliance on this passage is misplaced as it takes the passage out of context. The Court in Zadvydas was not attempting to create an exception with the language quoted by the Government, indeed the court was noting that in contrast to the potentially broad reach of § 1231(a)(6), other statutes which the Court had upheld limited their reach to specific and narrowly defined groups and provided procedural protections consistent with due process requirements. 533 U.S. 690-93.

Rather than attempt to distinguish Thai, the Government contends that the decision was wrongly decided and urges this court to adopt the reasoning of Judge Kozinki's dissent to the denial of rehearing en banc in Thai. See Thai v. Ashcroft, 389 F.3d 967 (9th Cir. 2004). Judge Kozinski rested his dissent on the argument that the regulatory scheme introduced in response to Zadvydas, 8 C.F.R. 241.14, narrowed the scope of the Attorney General's authority granted by 8 U.S.C. § 1231(a)(6) so as to bring it into conformity with Due Process requirements. Id. at 968-69. Judge Kozinski explained that the Attorney General "has accepted the six-month limitation as to most aliens and has provided stringent procedural protections for a narrow class of alien who are believed to be a danger to the community." In sum, the Government argues that although § 1231(a)(6) would generally limit detention to a six-month period, it authorizes indefinite detention of certain aliens– those determined by the Government to suffer from a harm-threatening mental illness.

This argument fails for two reasons. First, it rests on the faulty premise that the Zadvydas Court created an exception to its general rule for aliens with "harm threatening mental illness." As we noted above, we find no basis for this conclusion in the Zadvydas decision. Further, no Supreme Court or court of appeals opinions support this special exception contention.

Second, the Government's argument would require § 1231(a)(6) to be applied disparately, a possibility directly rejected by the Supreme Court in Clark. In Clark, the Court considered the precise question of whether the statutory construction of § 1231(a)(6) put forward in Zadvydas applies categorically to all classes of aliens covered by the statute whether or not the circumstances raise the same constitutional concerns. 543 U.S. at 723. The Clark court held that because the text of § 1231(a)(6), on its face, provides no distinction between the classes of aliens it covers, even in light of varying constitutional concerns, there was no justification for giving the same detention provision a different meaning. Id. at 724. The Court was unequivocal that based on the statutory text, § 1231(a)(6) must be interpreted consistently, without exception. Id. Thus, based on the clear language of Clark, this Court must conclude that the presumptive six-month period established in Zadvydas is applicable to all categories of aliens covered by the statute. Id. at 386.[4]

C.

The Government also contends that the district court erred in failing to defer to the Department of Homeland Security's ("DHS") interpretation of § 1231 (a)(6) as required under Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). According to the Government, Zadvydas held that the statute was ambiguous as to the length of time an alien could be detained beyond the removal period and 8 C.F.R. § 241.14 is a reasonable interpretation of this ambiguity. While it is true that Zadvydas found that §

---

[4] The Government also contends that the presumptive six-month period identified by the Zadvydas court is merely a presumption that may be rebutted with a showing that special circumstances exist, i.e., a showing that the alien is mentally ill and dangerous. We find no support for this contention in the either the Zadvydas or Clark opinions. The Zadvydas court makes clear that there is but one method for overcoming the six-month presumption: the government must furnish evidence which shows that there is significant likelihood of removal in the foreseeable future. To the extent that this argument is also premised on the proposition that there exists an exception for aliens with harm-threatening mental illnesses, it necessarily fails for the same reasons discussed above.

1231 (a)(6) was ambiguous as to this issue, the Government ignores the fact that the Zadvydas court resolved this ambiguity by imposing a requirement that the detention last no longer than reasonably necessary to effectuate removal. Thus, the question before this Court is whether 8 C.F.R. § 241.14 is based on a permissible interpretation of § 1231 (a)(6). See Chevron, 467 U.S. at 843 (stating that "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."); see also Thai, 366 F.3d at 798 (holding that a regulation may not authorize the Government to do what a federal statute prohibits).

The Supreme Court has twice held that § 1231(a)(6) does not authorize indefinite detention for any class of aliens covered by the statute. We are bound by the statutory construction put forward in Zadvydas and Clark. See Rivers v. Roadway Express, Inc., 511 U.S. 298 (1994) ("It is [the Supreme Court's] responsibility to say what a statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law."). Accordingly, 8 C.F.R. § 241.14, which was enacted under the authority of § 1231(a)(6), cannot authorize Tran's indefinite detention.

D.

As a final point of error, the Government contends that in order to uphold Congress's goal of protecting the public from violent, mentally ill criminals, this Court should find that § 1231(a)(6) authorizes detention for "a reasonable period."[5] However, in light of the unqualified holdings of both Zadvydas and Clark that § 1231(a)(6) does not permit continued detention where removal is not reasonably foreseeable, this Court cannot establish an exception where none exists. See French's Lessee v. Spencer, 62 U.S. (21 How.) 228, 238 (1858)

---

[5] The Government defines "a reasonable period" to be as long as an alien meets the three requirement enumerated in 8 C.F.R. § 241.14(f). See supra, at 3, n. 1.

10

(citations omitted) ("[W]here the Legislature makes a plain provision, without making any exception, the courts can make none."); see also Clark, 543 U.S. at 386 ("[F]or this Court to sanction indefinite detention in the face of Zadvydas would establish within our jurisprudence, beyond the power of Congress to remedy, the dangerous principle that judges can give the statutory text different meaning in different cases.").

While this Court is sympathetic to the Government's concern for public safety, we are without power to authorize Tran's continued detention under § 1231(a)(6). We note however that in a similar circumstance where public safety was also of great concern, Congress took prompt action to address the issue. In particular, in the field of national security, Congress enacted the Patriot Act which authorizes detention beyond the removal period of any alien whose removal is not foreseeable for additional periods of up to six months if the alien presents a national security threat.[6]  8 U.S.C. § 1226a.  Thus, not only are the Government's concerns properly directed to Congress, but importantly Congress has shown that it has the authority and willingness to address these concerns.

### III.  Conclusion

The Government does not dispute that Tran was detained well beyond the six-month presumptive detention period established in Zadvydas, nor does the Government dispute that Tran's removal is not reasonably foreseeable.  Thus, based on the Supreme Court's categorical interpretation of § 1231(a)(6), we conclude that the district court was correct in holding that this statute does not authorize Tran's continued detention.  Accordingly, we AFFIRM.

---

[6] Under the Patriot Act, the Attorney General's authority to detain non-removable aliens rests on the requirement that certain statutory criteria have been met; these criteria must be reviewed every six months.  See 8 U.S.C. § 1226a.